JOHN GLENN AND OTHERS,
vs.                                    JULY TERM, 1851.
MARGARET WOOTTEN AND OTHERS.

[TRUSTEE'S SALE SET ASIDE FOR WANT OF NOTICE.]

A DECREE directed the trustee to give " at least three weeks notice, inserted
in some newspaper," &c., " and such other notice as he may think proper,
of the time, place, and terms of sale." Upon the day duly appointed for
the sale the weather was inclement, no bidders were present, and there
was no attempt to sell, and the trustee advertised the property to be sold
four days thereafter, which advertisement appeared but once in the paper.
HELD—That the failure to give the notice as prescribed by the decree, was
a fatal objection to the validity of the sale.

A departure from the regulations of the decree in any essential respect,
without first attempting to sell in conformity with them, will always pre-
vent a ratification, if objection be made.

But after the trustee has once offered the property in the market, in the
mode prescribed by the decree, and has been unable to sell it, he may dis-
pose of it in a different mode, and then it is for the Court to say whether
it will ratify the sale or not.

When the trustee sells in the mode and upon the terms prescribed by the
decree, the Court has, by anticipation, bound itself to make good the sale,
and will always do so, unless fraud, accident, surprise, mistake, or some
cause is shown, manifesting gross want of discretion in the trustee.

But the faith of the Court is never pledged to ratify a sale made upon terms,
or in a mode varying from the decree, even though the property has been
once put in the market, in exact conformity with it, and the attempt so to
sell has been unsuccessful.

The direction in the decree to give public notice is most essential, because
without it competition can rarely be secured.

[The real estate of William T. Wootten, deceased, was de-
creed to be sold, under the proceedings in this case, for the
purpose of paying his debts. The decree directed the trustee
to give " at least three weeks previous notice, inserted in some
newspaper printed in Prince George's County, and such other
notice as he may think proper, of the time, place, manner, and
terms of sale," which were one-third cash, and the residue in
two equal annual instalments. The trustee, Mrs. Margaret
Wootten, in her report states, that having advertised the land

for more than three weeks, she postponed the sale thereof, in consequence of the inclemency of the weather, until the 17th of December, 1850, when the same was set up at public sale, on the premises, and the whole tract, containing 1085½ acres, was sold to Mrs. Mary Hall, for $13 62½ per acre, being in all $14,489 95, she being the highest bidder therefor.

To this sale, Albert A. Berry, a creditor to a large amount of said William T. Wootten, deceased, filed objections, *because*

1st. The whole tract was put up for sale, and sold together, whereas it was capable of advantageous division, and if so divided would have sold for much more.

2d. Sufficient and reasonable notice was not given of the time, place, manner, and terms of sale, by advertisement in papers, or otherwise.

3d. Many persons desirous of purchasing parcels thereof, were kept from the sale by a report that the whole was to be sold in a lump.

4th. The widow's dower should have been first assigned, so that purchasers might know in what parcel she would hold the same.

5th. The sale made was done collusively, and with the view of being purchased at a depreciated value, for the benefit of the family of the deceased, and the injury of exceptant and his other creditors.

6th. The land only sold for $13 62½ per acre, being not one-third of its fair value, when if the same had been offered in parcels, it would readily have brought from $30 to $40 per acre.

Depositions were taken in support and in opposition to these exceptions, the purport of which sufficiently appears in the opinion of the Chancellor.]

The Chancellor :

This case is submitted upon exceptions to the sale reported by the trustee, Mrs. Margaret Wootten, and the depositions and arguments, in writing, of the solicitors of the parties, have been read and carefully considered by the Court.

The exceptions, so far as they refer to the manner in which the property was sold, and the amount at which it was struck off to the reported purchaser, are not, in my judgment, sustained. Upon examining and carefully analyzing and collating the proof, I find nothing to raise a reasonable doubt either of the perfect fairness of the sale, or that the property sold at an under value. On the contrary, everything appears to have been conducted in such a way as to remove all suspicion of management or contrivance to dispose of the estate for less than it was worth; and looking to the evidence, I see nothing to warrant the charge that the price given was inadequate.

But though the party objecting to the sale in this case has, in my opinion, failed in showing anything affecting its *bona fides*, he has interposed one objection which, under the circumstances, appears to me to be insuperable. This objection refers to what the late Chancellor called the "mere modal regulations," for the government of the trustee in putting the property in the market. These regulations are prescribed by the decree, and it will be found, I think, upon an examination of the precedents, that a departure from them in any essential respect, without first attempting to dispose of the property in conformity with them, will always prevent a ratification of the sale, if objection be made. In *Andrews* vs. *Scotton*, 2 *Bland*, 643, it was said, "If a trustee who is directed by the decree to sell the tract of land entire, and at public sale, should sell it at private sale, and in parcels, or in any other manner different from the mode prescribed, and report satisfactory reasons for so doing, *and no objection is made*, the sale may be ratified." It would appear from this case that if the trustee undertake to sell the property in a mode not warranted by the decree, he must not only report satisfactory reasons for so doing, but even then the sale will not be ratified if objection be made; and in the same case it is said, that the Court, acting as proprietor, and as if the property were its own, will avail itself of information from every quarter from which it may be derived; from the original parties to the suit, or the creditors for whose satis-

faction the sale is made, or from any other person, though, of course, more attention will be paid to objections coming from those who are interested than from volunteers.

But though the trustee must conform to the directions of the decree with regard to the manner of putting the property in the market, and any material deviation therefrom in the first instance, and without an attempt to sell in the mode prescribed, will defeat a sale made in a different manner, if the objection is interposed; yet still, after the trustee has once offered the property in the market, in the mode prescribed by the decree, and has been unable to sell it in that way, he may dispose of it in a different mode. The reason for this, as stated by the Chancellor in *Gibson's case*, 1 *Bland*, 144, is, "that the trustee being in all cases required to make a report in writing of only such a sale as he can, on oath, state to have been in all respects fairly made, which cannot be ratified without consent until public notice has been given to show cause, if any there be, why it should not be confirmed, there can be no danger or inconvenience in allowing him to deviate from the prescribed manner and terms of sale, after the property has, by advertisement, and an actual public offer to sell at the time and place appointed, been completely put in the market."

It is quite clear, therefore, if these cases are to be regarded as furnishing the true rule upon this subject, and I am, upon full reflection, satisfied they do, that this Court will not ratify a sale made by its trustee when, without an attempt to sell in the mode prescribed by the decree, he undertakes to dispose of the property in a different mode. It must be obvious that those portions of the decree which direct how, and in what manner, and upon what terms the property should be sold, are all mere unmeaning words if the trustee may, without an attempt to comply with them, sell in such mode and upon such terms as to him may seem fit. When, to be sure, the property has been put in the market, in the manner and upon the terms directed by the decree, and the effort so to sell has been unavailing, there can be no objection to the trustee's accepting a bid upon different terms, or to his disposing of the property at private

sale, subject to the ratification of the sale by the Court, after public notice given to show cause why it should not be confirmed. And even in these cases, when an ineffectual attempt has been made to sell according to the decree, and the property is then sold upon terms varying from it, objections to its ratification will prevail which would be disregarded if made to a sale in all respects in conformity with its requirements. And this, for the reason stated by this Court in the recent case of *Latrobe* vs. *Herbert et al.*, in which, upon full argument, it was held, that the faith of the Court was never pledged to ratify a sale made upon terms or in a mode varying from the decree, even though the property had once been put in the market in exact conformity with it, and the attempt so to sell had been unsuccessful. The principle of the decision being, that when the trustee, who is the agent of the Court, has sold the property in the mode and upon the terms specified in the decree, the Court has, by anticipation, bound itself to make good the sale, and will always do so, unless fraud, accident, surprise, ·mistake, or some cause is shown, manifesting a gross want of discretion in the trustee. Whilst in the case of a sale upon different terms, or in a different mode, inasmuch as no previous authority was given, the Court may, without any imputation of bad faith, refuse to give its sanction to it. In the one case, the agent having acted within the scope of his authority, and according to the mode prescribed for him by his principal, the latter, unless for some one or more of the reasons which have been suggested, is bound in good faith to give validity to his act; whilst in the other, the act derives its validity, if valid at all, from the subsequent adoption and ratification of it by the principal.

In the case now under consideration, the agent of this Court no doubt, from inadvertence, has departed from one of the most important·directions of the decree, that of the public notice to be given of the time, place, manner, and terms of sale, and it would, as I conceive, be establishing a precedent full of danger, to ratify a sale under such circumstances in the face of an objection for that cause.

Is it not possible to vindicate the sale as reported from this objection, upon the ground that the notice of it was a mere continuation of that which was advertised for the 7th of December last, because on that day no notice was given that the sale would be postponed to any particular day. The proof shows that the weather on the 7th of December was most inclement, so much so, that no persons attended, or at least so few, that there could have been no competition. Mr. Charles C. Hill states in answer to the 5th interrogatory, " I do recollect the day. It was very wet and inclement. I went to the premises with my aunt, Mrs. Mary Hill. I found no one there, and suggested to the trustee to postpone the sale, and readvertise the land. I waited there until 3 o'clock, and no one attended. I then made the suggestion above." And the proof of all the witnesses who testify upon the subject, corroborate this statement in regard to the weather.

The trustee appears to have adopted the suggestion of Mr. Hill, and accordingly, on the 13th of December, advertised the property to be sold on the 17th of the same month, and the proof of the editor and publisher of the paper in which it was inserted, shows that it appeared in his paper but once, that being the day of the date of the advertisement. There was, therefore, but four days' notice given, though the decree expressly requires the trustee to give " at least three weeks' notice, inserted in some newspaper printed in Prince George's County, and such other notice as she may think proper, of the time, place, manner, and terms of sale." There was, therefore, a total failure to comply with this most vital direction of the decree, a direction which, perhaps, of all others, is most essential to the safety of persons interested in the sale of the estates of deceased persons, because unless public notice is given, competition, so indispensable to the disposition of property at its full value, can never or very rarely be secured.

It cannot be said that this sale should be ratified, because there was one attempt to sell the property at public auction after due notice, which was unavailing. The state of the weather, and the absence of bidders, on attempt to sell on the

7th, render it impossible to contend that that was putting the property completely in the market, in the manner and upon the terms prescribed by the decree. In point of fact, it was not put in the market at all, because there was on that day no market to put it in. In the absence of bidders, the sale was with great propriety postponed, without any attempt to dispose of the property.

Now, will it do to say that the property was sold for a fair price, and therefore the sale should be confirmed? The answer is, that when the decree directs "that the property shall be put in the market by advertising and offering it for sale," the trustee must follow the directions, but after he has done so, if it cannot be sold at public auction upon the terms specified, he may accept of a bid upon different terms, or he may dispose of it at private sale, and then it will be for the Court to say, when the trustee shall have made his report, whether, under all the circumstances, it ought to be ratified.

The true test of the value of property, is what it will bring in the market, and the interest of suitors requires that it shall be subjected to that test, and it would be dangerous for the Court, before that has been fairly tried, to enter into an examination of witnesses, who, however intelligent and unobjectionable in all respects, may not be able to supply the place of the only perfectly safe standard.

Upon the whole, then, though I see nothing in the evidence to induce a belief that the property sold at an undervalue, or that it would have brought more if sold in parcels, and although I am entirely satisfied that the sale was in all respects conducted with the most perfect fairness and propriety, yet still I consider it my duty to set it aside, and send the property again into the market, because in making the sale, the trustee did not act in conformity with one of the most important directions of the decree, and because in confirming it, I should be making a new, and in my opinion, a dangerous precedent.

———

FRANK H. STOCKETT, for the Exceptant.
PRATT, for the Purchaser and Trustee.